# UNITED STATES DISTRICT COURT
# NORTHERN DIVISION OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| FRANSHON D. THOMAS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Cause No. 4:08-CV-96-WCL-APR |
| ) | |
| FAIRFIELD MANUFACTURING COMPANY, ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by defendant Fairfield Manufacturing Company ("Fairfield") on July 28, 2009 (docket at 16). Fairfield also filed a brief in support of its motion for summary judgment ("Def.'s Brief") (docket at 17). The *pro se* plaintiff, Franshon Thomas ("Thomas"), filed a response in opposition to the motion on October 13, 2009 ("Plf.'s Response") (docket at 27),[1] to which Fairfield replied (docket at 28). For the reasons discussed herein, the motion for summary judgment is **GRANTED**.

## *PRO SE* COMPLAINT

On December 24, 2008, Thomas filed suit against Fairfield alleging that his former employer unlawfully discriminated and retaliated against him (docket at 1). Using a form complaint, Thomas

---

[1]Thomas failed to file a "Statement of Genuine Issues" setting forth all material facts he contends create a genuine issue for trial, pursuant to N.D. Ind. L.R. 56.1. However, because no separate motion to strike was filed, *see* N.D. Ind. L.R. 7.1, and the court is obligated to hold his *pro se* pleadings to a less stringent standard than those drafted by attorneys, the court considers the documents submitted by Thomas. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Alvardo v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

indicated that his lawsuit was brought pursuant to "42 U.S.C. § 1981," yet he affirmed that the facts supporting his complaint consisted of his being "fired while out on FMLA. . . [and] retaliation for filing suit against [Fairfield]."[2] *Id*. Thomas indicated that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue Notice, but he failed to attach a copy of the notice to the form complaint. *Id*.

Fairfield objected to Thomas' complaint as insufficient, but still considered whether Thomas' claims survived summary judgment under the available legal remedies, including 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), and The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et. seq.* ("FMLA").

Because the *pro se* complaint should be construed broadly, the court agrees that Thomas' complaint brings a Section 1981/Title VII discrimination claim based on race,[3] retaliation claims based on the prior discrimination lawsuit Thomas filed against Fairfield, and FMLA retaliation and interference claims based on Thomas' use of FMLA leave time and subsequent termination.

**SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper

---

[2] *See Thomas v. Fairfield Manu. Co., Inc.*, 2009 WL 1043959 (N.D. Ind. Apr. 17, 2009) (No. 4:07-CV-56-AS) (granting summary judgment in favor of Fairfield on Thomas' claims of race discrimination, retaliation, and hostile work environment).

[3] Title VII claims and claims under Section 1981 are analyzed in the same way. *See Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1028 (7th Cir. 2004) (stating that Section 1981 and Title VII claims are evaluated under the same rubric and thus, there is no need to address them separately). As such, the court refers only to Title VII in this order.

2

"if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of informing the court of the basis for the motion and identifying the evidence that demonstrates an absence of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must. . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if the nonmoving party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper. *Celotex*, 477 U.S. at 323.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id*. To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). No genuine issue for trial exists "[w]here the record as a whole could not lead a rational trier of fact to find for the

nonmoving party." *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita*, 475 U.S. at 587).

Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322.

## FACTUAL BACKGROUND

Thomas, an African American, began his permanent employment with Fairfield on June 21, 2004, and worked as a second-shift production employee on the weekdays from 3:00 p.m. until 11:00 p.m. (Clark Aff., ¶¶ 6, 8). As a Fairfield employee, Thomas was required to abide by Fairfield's Attendance Policy, under which employees accrued points for unexcused absences and received progressive discipline after accruing a certain number of points. (*Id*. at ¶¶ 11, 13-14, Exb. 2). Under the terms of the Attendance Policy, if the absence was on account of FMLA leave, then the absence was excused. (*Id*. at ¶ 15). However, the Attendance Policy did not excuse an absence for appearing as a defendant in a criminal proceeding. (*Id*. at ¶ 15). Pursuant to the Attendance Policy, Fairfield disciplined employees based on the accrual of points, not on race or history of claims against the company. (*Id*. at ¶¶ 14, 16).

In addition to the Attendance Policy, Thomas and all Fairfield employees were required to abide by Fairfield's Work Rules and Regulations ("Work Rules"). (Clark Aff., ¶ 9, Exb. 1). Fairfield's Work Rules strictly prohibited falsification or misrepresentation of documentation and information, under which, the penalty for violating the prohibition was immediate termination. (*Id*.

4

at ¶ 9). Pursuant to the Work Rules, Fairfield consistently terminated employees who were found to have falsified requests for leave under the FMLA, regardless of race or history of claims against the company. (*Id*. at ¶ 10, 17-19).

Thomas' attendance at Fairfield was erratic, even after being suspended in February 2006 for having acquired too many attendance points. (Clark Aff., ¶¶ 20-25, Exbs. 3-5). Beginning in May 2006, Thomas began requesting and receiving FMLA leave in order to cover time missed from work due to hypertension. (*Id*. at ¶ 28). Between May 2006 and March 2008, Thomas had submitted many FMLA medical certifications setting forth his need to miss several days of work per month in relation to his high blood pressure. (*Id*. at ¶¶ 28-29). More than once, Thomas was approved for twelve weeks worth of FMLA leave in a twelve month period, but received no attendance points for the FMLA leave absences. (*Id*. at ¶¶ 26-27).

On February 28, 2008, Thomas submitted an FMLA medical certification which reported that his chronic, uncontrolled hypertension would cause him to miss six to seven days of work per month, due to his blood pressure reaching "dangerous levels" or to attend physician appointments. (Clark Aff., ¶ 29, Exb. 6; Plf.'s Response at 2-4). Pursuant to the February certification, Fairfield approved many days of FMLA leave for Thomas. (Clark Aff., ¶ 29). Despite not receiving points for excused absences, including his FMLA leave absences, Thomas had accrued 8.5 attendance points by February 2008 and faced the possibility of being immediately terminated if he incurred one more unexcused absence before September 2008. (*Id*. at ¶ 25).

Thomas missed work on March 12, 14, 17, 18, and 19. (Clark Aff., ¶¶ 31, 35, 41; Plf.'s Response at 1). Thomas maintains that he was sick on these days and used FMLA leave time. (Plf.'s Response at 1). Fairfield questioned Thomas' need for FMLA leave and began investigating. (Clark

5

Aff., ¶ 32). Knowing that Thomas had been convicted of crimes in the past, Fairfield Labor Relations Manager, Vicki Clark, accessed the Tippecanoe County Superior Court's electronic docket and learned that Thomas was scheduled to appear in court for a sentencing hearing on March 12 at 4:00 p.m. (*Id*. at ¶ 32). The hearing was postponed to March 18, but Thomas had already called Fairfield's absence-reporting line on March 12 and requested FMLA leave, which Fairfield granted. (*Id*. at ¶¶ 31, 33-34). On March 18, Thomas again called Fairfield's absence-reporting line and left a message at 1:30 p.m. stating that he was unable to work and needed FMLA leave, but that he would be back to work "tomorrow," March 19. (*Id*. at ¶ 35). Thomas did not work on March 18, but Clark knew from the online docket that Thomas appeared at his scheduled sentencing hearing in state court. (*Id*. at ¶¶ 35-36). Clark and Fairfield Vice President of Human Resources, James Mills, concluded that Thomas' absence from work on March 18 was not related to any FMLA qualifying condition and did not meet any other type of excused absence criteria. (Clark Aff., ¶¶ 37-38; Mills Aff., ¶¶ 9-12). As such, on March 18 Thomas earned another point for an unexcused absence under the Attendance Policy, resulting in his accumulation of 9.5 attendance points (after having served a suspension in the last twelve months). (Clark Aff., ¶ 39; Mills Aff., ¶ 12). Fairfield notified Thomas of his termination in a letter dated March 19, 2008, which stated the following:

> It appears from the information that we have been provided that you may have falsified at least one request for leave under Fairfield's FMLA Policy, which is an offense that calls for immediate termination under Fairfield's Work Rules and Regulations. Even if you were not found to have falsified your leave request on March 18 your absence would give rise to attendance points under Fairfield's Attendance Policy, which does not treat absences for court appearances as unexcused.
>
> Under Fairfield's Attendance Policy, employees who accumulate 9 points are subject to termination. . . you had accumulated 8.5 points through February 16, 2008. . . Even if [the March 14 and 17] absences were approved [for FMLA leave], your absence for your court appearance on March 18 would add one additional point to

6

> your attendance point total, taking you to 9.5 points overall. Accordingly, this letter is to inform you that you are being terminated for excessive absenteeism in violation of Fairfield's Attendance Policy.

(Mills Aff., ¶¶ 13-14, Exb. 1; Plf.'s Response at 6). Fairfield maintains its position that Thomas' termination was proper because even if he did not falsify a need for FMLA leave, his March 18 absence was unexcused and resulted in an accumulation of points making termination proper. (Clark Aff., ¶ 40; Mills Aff., ¶ 13).

Thomas submits that he was wrongly terminated because his March 18 absence should have been excused under the FMLA. (Plf.'s Response at 1). Thomas produced a letter dated March 20 from Dr. Sutton's office which stated that he was seen in the office on March 17 for his increased blood pressure which was outside of the desirable range. (Plf.'s Response at 5). He also provided an FMLA medical certification form dated March 21, which indicated that he needed medical leave from approximately March 14 to 19 because his hypertension left him unable to perform his work. (Plf.'s Response at 2-4).

The evidence produced by Thomas only addressed his FMLA claims. Thomas provided no inferences, facts, or documentation to support his race-based claims. Further, Thomas did not offer any facts in support of his claim that Fairfield retaliated against him for filing the prior lawsuit in September 2007—but Fairfield acknowledges receiving notice of the related EEOC charge in November 2006 (Def.'s Brief at 8). Thomas was terminated over one year and four months after he filed the previous EEOC charge, and almost six months after he filed the previous complaint.

## DISCUSSION

### I. Racial Discrimination Claims

Title VII of the Civil Rights Act of 1964 provides that it "shall be an unlawful employment practice for an employer. . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,. . . or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on his race discrimination claim, Thomas must either proffer direct or circumstantial evidence of his employer's discriminatory motivation/intent (known as the direct method), or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See*, *e.g.*, *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1114, 1119 (7th Cir. 2009) (a plaintiff proceeding under the direct method survives summary judgment by creating a triable issue as to whether discrimination motivated the adverse employment action); *Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005) (stating that under the indirect approach the plaintiff must present evidence tending to show he was a member of a protected class, he was meeting his employer's legitimate performance expectations, he suffered an adverse employment action, and he was treated less favorably than similarly situated employees who are not African American).

Thomas offered no evidence to support his racial discrimination claims—direct, circumstantial, or otherwise. The record does not establish any events implicating race as an issue, nor show that any Fairfield employee made statements or admissions involving race. The record is also absent of any facts or inferences suggesting a causal connection between Thomas' termination and his being African American. Not only has Thomas failed to produce evidence of discrimination under the direct method of proof, but he cannot meet the *prima facie* case under the

indirect method without evidence of similarly situated unprotected employees. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (a similarly situated employee must be "directly comparable in all material respects," such as, whether the employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them).

By submitting a response that does not even reference his race-based claims, Thomas has not met his burden in showing that a genuine issue exists for trial. The court grants summary judgment in favor of Fairfield on Thomas' discrimination claims asserted under Section 1981 and Title VII.

## II. Retaliation Claims

Thomas claims that Fairfield retaliated against him for filing his September 2007 lawsuit against Fairfield for racial discrimination, retaliation, and hostile work environment. *See Thomas v. Fairfield Manu. Co., Inc.*, 2009 WL 1043959 (N.D. Ind. Apr. 17, 2009) (No. 4:07-CV-56-AS). Under Title VII, it is unlawful for any employer to discriminate against an employee for opposing a practice made unlawful by the Act. 42 U.S.C. § 2000e-3(a). *See also CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951 (2008) (determining that Section 1981 encompasses retaliation claims). As the Seventh Circuit has stated, "[A]n employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII." *Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir. 2005). Again, Thomas may proceed under the direct or indirect method to prove his retaliation claims. *See Metzger v. Ill. State Police,* 519 F.3d 677, 681 (7th Cir. 2008).

Thomas does not satisfy the requirements of the indirect method because he failed to identify

9

a similarly situated employee who did not engage in statutorily protected activity yet received better treatment than he did. *Id.*; *see Mitchell v. Dutchmen Mfg., Inc.,* 389 F.3d 746, 750 (7th Cir. 2004) (failure to satisfy any one element of the *prima facie* case dooms an employee's retaliation claim). Therefore, the court considers whether Thomas can overcome summary judgment by using the direct method of proof.

In order to establish a *prima facie* case of retaliation under the direct method of proof, a plaintiff must establish that he: (1) engaged in a statutorily protected activity; (2) suffered a materially adverse action subsequent to his participation; and (3) there was a causal link between the adverse action and the protected activity. *Lewis v. City of Chicago,* 496 F.3d 645, 654-55 (7th Cir. 2007). The issue in this case is whether Thomas has established the requisite causal connection. In order to prove a causal link, "the plaintiff is required to show that the employer would not have taken the adverse action 'but for' the plaintiff's engagement in the protected activity." *McKenzie v. Ill. Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996).

Again, Thomas did not discuss his retaliation claims or offer facts in support of the claims in an attempt to preclude summary judgment. However, the court considers what evidence is available, including the circumstantial evidence related to timing. Fairfield became aware of the previous lawsuit in November 2006 when it received a copy of the EEOC charge which resulted in Thomas' September 2007 lawsuit. But Thomas was not terminated until March 19, 2008—long after the EEOC charge and lawsuit were filed. The timing of Thomas' termination after pursuing litigation does not amount to timing which is suspicious enough to establish a causal link. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) (finding that the approximate seven week interval between the sexual harassment complaint and subsequent arrest/termination did not

10

represent that rare case where suspicious timing, without more, would carry the day).

Even if the timing of Thomas' termination was suspicious, the Seventh Circuit has made it clear that "[s]uspicious timing alone rarely is sufficient to create a triable issue" and on a motion for summary judgment "mere temporal proximity is not enough to establish a genuine issue of material fact." *Cole v. Ill.*, 562 F.3d 812, 816 (7th Cir. 2009) (citing *Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 851 (7th Cir. 2008)); *see also Sauzek v. Exxon Coal USA, Inc*., 202 F.3d 913, 918 (7th Cir. 2000) (reasoning that "other circumstances must also be present which reasonably suggest that the two events are somehow related to one another"). Thomas has not introduced any evidence to suggest that his termination stemmed from any cause other than Fairfield's belief that he falsified requests for FMLA leave time in violation of the Work Rules and/or had accrued too many points for unexcused absences pursuant to the Attendance Policy. Thomas cannot establish a causal link between his termination and the protected activity under the third prong of the retaliation *prima facie* case.

Because there is insufficient evidence of retaliation under the direct or indirect methods of proof, summary judgment is appropriate on Thomas' retaliation claims.

## III. FMLA Claims

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et. seq*., entitles any eligible employee suffering from a serious health condition that renders the employee unable to perform the functions of the position to twelve workweeks of leave during each twelve month period. 29 U.S.C. § 2612(a)(1)(D). After the period of qualified leave expires and the employee returns to work, the employee is entitled to be reinstated to his or her former position or to an equivalent position with the same benefits and terms of employment. 29 U.S.C. § 2614(a). The FMLA makes it unlawful for

an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any FMLA rights, 29 U.S.C. § 2615(a)(1), and forbids an employer from retaliating against an employee who exercises FMLA rights. 29 U.S.C. § 2615(a)(2) (prohibiting discrimination against an individual who opposes practices made unlawful by the FMLA); 29 U.S.C. § 2615(b) (prohibiting discrimination against persons who participate in or institute FMLA proceedings or inquiries).

The FMLA therefore contemplates both theories of recovery presumably advanced by Thomas: discrimination/retaliation, requiring proof of discriminatory or retaliatory intent, and interference/entitlement, requiring only proof that the employer denied the employee his entitlements under the Act. *See Burnett v. LFW, Inc.,* 472 F.3d 471, 477 (7th Cir. 2006); *Kauffman v. Fed. Express Corp.,* 426 F.3d 880, 884-85 (7th Cir. 2005).

### a. Discrimination/Retaliation

A plaintiff can avert summary judgment on an FMLA retaliation claim either by proffering direct or circumstantial evidence of his employer's discriminatory motivation, or by establishing that after taking FMLA leave he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though he was performing his job in a satisfactory manner. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008) (citing *Burnett,* 472 F.3d at 481-82).

Because Thomas has not identified a similarly situated person who did not request FMLA leave and who was treated more favorably, he must proceed under the direct method of proof. *See Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 951 (7th Cir. 2006) (plaintiff must show that after taking FMLA leave, he was treated less favorably than other similarly situated employees who did not take FMLA leave).

Under the direct method, Thomas must present evidence that Fairfield took a materially

adverse action against him—here, termination—on account of his using FMLA leave. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (citing *Burnett*, 472 F.3d at 481). Thomas need not prove that retaliation was the *only* reason for his termination, but he may establish an FMLA retaliation claim by "showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Sch. Dist. #70*, 523 F.3d at 741-42 (citations omitted). "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Id.* at 742.

As mentioned, Thomas may use two types of evidence to prove that Fairfield acted with a discriminatory motivation: direct evidence or circumstantial evidence. *Sch. Dist. #70*, 523 F.3d at 742 (citations omitted); *but see Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) *clarified by Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (finding that circumstantial evidence is relevant and probative on any of the elements of a direct case of retaliation) (citing *Sylvester v. SOS Children's Vills. of Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006); *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006)). Direct evidence is evidence "which (if believed by the trier of fact) will prove the fact in question without reliance upon inference or presumption." *Sch. Dist. #70*, 523 F.3d at 742. Direct evidence generally involves an admission or a statement by the decisionmaker regarding his discriminatory intent. *Id*. Circumstantial evidence "allows the trier of fact to *infer* intentional discrimination by the decisionmaker." *Id.* Direct evidence is not required under the direct method of proof; circumstantial evidence that suggests discrimination, "albeit through a longer chain of inferences," is sufficient. *Id*.

If the plaintiff's evidence is thereafter contradicted, the case must be tried unless the

defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if the defendant lacked a retaliatory motive; in that event, the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation. *Stone*, 281 F.3d at 644; *Burnett*, 472 F.3d at 481.

It is not disputed that Thomas took FMLA leave time and that he suffered termination. However, Thomas fails to identify any admission of retaliatory animus, and offers no evidence to suggest that Fairfield viewed FMLA leave time negatively, discouraged taking leave, made it difficult to seek leave, or made disparaging comments. In fact, despite having a history of erratic attendance and an accumulation of unexcused absences, on more than one occasion Thomas was approved for twelve weeks worth of FMLA leave in a twelve month period, and was not charged attendance points for the absences.

The most prominent evidence proffered by Thomas is the fact that he was terminated *while* on FMLA leave. But "a temporal sequence analysis is not a magical formula which results in a finding of a discriminatory cause." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004). Here, temporal proximity is all that Thomas relies on under the direct method, and it does not create an issue of fact. *But see King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir. 1999) (reasoning that temporal proximity created an issue of fact where the plaintiff's termination occurred one day after she finished her FMLA leave).

The undisputed evidence reveals that Clark discovered that Thomas was scheduled for and appeared as a defendant at criminal proceedings on the same days that he did not work. This discovery took place after Thomas requested FMLA leave time. The fact that Fairfield terminated Thomas while on leave cannot be sufficient to establish causation because these actions do not

14

suggest that Fairfield was acting under a prohibited animus. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 634 (7th Cir. 2009) (discharging an employee when he returns from FMLA leave due to performance problems discovered while the employee was on leave cannot be sufficient evidence to establish causation, otherwise the employer would be forced to employ a substandard employee after the FMLA leave concludes or risk facing liability). In this case, after discovering that Thomas twice took FMLA leave when he was scheduled to appear in court, Clark and Mills were led to believe that Thomas had falsified his FMLA leave requests and had accumulated enough attendance points to substantiate his termination. *See id*. Even if such a belief was mistaken, which is all Thomas' evidence tends to establish, it would still constitute a nondiscriminatory reason for the adverse employment action and would preclude Fairfield's liability. *Id*.

Although Thomas has evidence of a close temporal sequence, no reasonable jury could infer simply from this circumstantial evidence that Thomas' use of FMLA leave time was a motivating factor in Fairfield's decision to fire him. *See Sauzek*, 202 F.3d at 918. Accordingly, Thomas' FMLA claim for discrimination/retaliation does not survive Fairfield's summary judgment motion.

**b. Interference/Entitlement**

Thomas alleges that Fairfield interfered with his rights under the FMLA by firing him instead of granting leave due. *See* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided"); *Burnett v. LFW, Inc.,* 472 F.3d 471, 477 (7th Cir. 2006). The issue in Thomas' case is whether he was abusing his leave or whether Fairfield interfered with his rights when it fired him.

To make out a claim for interference, Thomas must show that he is an "eligible employee," 29 U.S.C. § 2611(2), who took leave "for the intended purpose of the leave," 29 U.S.C. § 2614(a)(1),

15

and whom the employer then denied a benefit as a result of that leave, 29 U.S.C. §§ 2614(a)(3), 2615(a)(1). *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909 (7th Cir. 2008). Accordingly, an employer can defeat an interference claim by showing, among other things, that the employee did not take leave "for the intended purpose." *Id.* (citing *Crouch v. Whirlpool Corp.,* 447 F.3d 984, 986 (7th Cir. 2006) ("[A]n employer is under no obligation to reinstate an employee who misuses disability leave.")). The Seventh Circuit has "interpreted this to mean that an employer has not violated the FMLA if it refused to reinstate the employee based on an 'honest suspicion' that [the employee] was abusing [his] leave." *Id.*

Fairfield meets this showing. Knowing of Thomas' past criminal behavior, Fairfield investigated Thomas' March 12 absence and FMLA leave request by accessing the state court's online docket. Fairfield discovered from the docket that Thomas was originally scheduled to attend a criminal sentencing on that day, which was then postponed after Thomas had requested FMLA leave. With the court hearing continued to March 18, Thomas went to the doctor's office on March 17 for his hypertension (which Fairfield was not aware of at the time). The evidence does not indicate that Thomas received any type of medical certification while at this appointment, let alone one that Fairfield was aware of at the time. When Thomas again requested FMLA leave on March 18, Fairfield again accessed the court docket after Thomas failed to show up at work. The docket confirmed Thomas' appearance at the sentencing hearing, during which time he was scheduled to be at work. This information was sufficient to give Clark and Mills "honest suspicion" that Thomas was not using his leave "for the intended purposes," thereby resulting in his termination.[4] *See Vail*,

---

[4]The court recognizes that subsequent to the decision to terminate, uncontested evidence reveals that Thomas again requested FMLA leave on March 19 and did not work that day, but instead appeared in person at the Tippecanoe County Community Corrections Facility. (Clark

16

533 F.3d at 909-10; *but cf. Weimer v. Honda of Am. Mfg., Inc.*, 2008 WL 2421648 (S.D. Ohio June 12, 2008) (denying summary judgment based on a sloppy and incomplete record which presented several questions of fact, including a question as to whether the employer actually held an honest belief that the employee was engaging in dishonest conduct in contravention of company policy).

After his termination, Thomas produced a medical certification dated March 21, indicating that he needed medical leave to excuse his previous absences. Despite the doctor's certification providing the information needed to satisfy the statute, *see* 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306(b), it does not create a genuine issue of fact as to Fairfield's honest belief that Thomas was taking advantage of the system in order to handle his criminal matters. *See Simpson v. Office of Chief Judge of Cir. Ct. of Will County*, 559 F.3d 706, 714, 717 (7th Cir. 2009) (an employee cannot avoid summary judgment where the employee failed to dispute the reason for the termination). As a result of Fairfield's uncontested "honest suspicion," no violation of Thomas' rights under the FMLA occurred and summary judgment is proper.

## CONCLUSION

By not providing any facts in support of his racial discrimination claims, or his retaliation claims based on the former lawsuit he filed against Fairfield, Thomas essentially abandoned these claims. In any event, having reviewed the record and viewing the facts in the light most favorable to Thomas, he cannot establish that similarly situated unprotected employees were treated more favorably than he was treated, nor can he show a casual connection between his termination and his

---

Aff., ¶ 41-42).

race or his history of claims against Fairfield. His failure to establish specific facts (under either the indirect or direct methods of proof) showing that there is a genuine issue for trial as to his Section 1981 and Title VII claims, mandates summary judgment.

So too, Thomas is unable to produce evidence that Fairfield terminated him on account of his using FMLA leave time to which he was entitled. The undisputed facts show that despite having many unexcused absences throughout his tenure, Thomas was frequently granted FMLA leave time until Fairfield honestly suspected him of using the time to attend criminal proceedings. Thomas' use of FMLA leave time was not a motivating factor for his termination. Any claim that Fairfield engaged in unlawful retaliation under the FMLA, or interfered with FMLA leave which Thomas was entitled to, fails as a matter of law.

Based on the foregoing, defendant Fairfield Manufacturing Company's motion for summary judgment on plaintiff Franshon Thomas' complaint is **GRANTED** (docket at 16). The Clerk is directed to enter judgment in favor of the Defendant.

SO ORDERED.

DATED: December 15 , 2009

                                                         s/William C. Lee
                                                         WILLIAM C. LEE, JUDGE
                                                         UNITED STATES DISTRICT COURT